Sterling **WILKERSON**, Plaintiff,

v.

Eric **HESTER**, individually, in his capacity as a law enforcement officer and as an agent of Defendant Sheriff Daniel Good; Sheriff Daniel Good, in his official capacity; and Travelers Casualty and Surety Company, bonding agent for Sheriff Daniel Good; Defendants.

No. CIV.1:99CV130.

United States District Court, W.D. North Carolina, Asheville Division.

Aug. 30, 2000.

Michael Lee King, King & Stockton, Salisbury, NC, for plaintiff.

Scott D. MacLatchie, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motion for summary judgment to the Magistrate Judge for a recommendation as to disposition. Because the Memorandum and Recommendation was filed approximately two weeks prior to the beginning of the trial calendar, Plaintiff's counsel was notified that the time within which to file objections was shortened and any objections to the Memorandum and Recommendation should be filed no later than Sunday, August 27, 2000, *via* the drop box for filing at the United States Courthouse in Charlotte, North Carolina. Counsel did not file objections within this time; however, objections were transmitted *via* facsimile to the chambers of the undersigned between approximately 4:00 p.m. and 4:30 p.m. on August 28, 2000. Despite an abundance of caution, the undersigned has conducted a *de novo* review of the recommendation and finds that the Defendants' motion for summary judgment should be granted. 28 U.S.C. § 636(b); Fed. R.Civ.P. 72.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the Defendants as the moving parties have the initial burden to show a lack of evidence to support Plaintiff's case. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. STATEMENT OF FACTS

This action stems from the Plaintiff's warrantless arrest on July 4, 1996, after being stopped while driving his father's truck in Spindale, North Carolina. The Plaintiff testified at his deposition that after having been stopped by the officers, he got out of the truck and the arresting officers told him to put his hands on the vehicle and his face down on the hood. Exhibit C, Excerpts from the Deposition of Sterling Wilkerson, *attached to* Defendants' Motion for Summary Judgment, at 17. As he did so, he heard someone call his name, causing him to turn his head to look up. *Id.,* at 17–18. When Plaintiff turned his head, the officer moved Plaintiff's leg out from under him and pushed him to the ground, causing his right hand to skid across the asphalt road. *Id.* One of the officers put his knee on the Plaintiff's back and handcuffed him. *Id.* After being handcuffed, he was lifted to his feet. *Id.,* at 28. Other than the officer's knee being placed on Plaintiff's back, he was not hit, kicked or struck. *Id.* Plaintiff testified there was no physical abuse used and he could not recall any verbal abuse. *Id.*

Plaintiff was taken to the local detention facility at which point he noticed that one of the fingers on his right hand was swollen and painful. *Id.* However, Plaintiff did not report this to anyone at the jail be-

cause he felt nothing would be done. *Id.,* at 36.

The Plaintiff also testified that, in his opinion, he was stopped on the day in question because Robin Spence had called the local police to complain that he was speeding and "running everybody off the road." *Id.,* at 65. According to the amended complaint, Spence was a deputy clerk of court who disliked the Plaintiff due to past dealings with him over child support payments. Plaintiff also testified that he could not say that his arrest occurred because he is African American. *Id.* He did admit, however, that he may have been speeding prior to the arrest. Exhibit 3, Excerpts from the Deposition of Sterling Wilkerson, *attached to* Plaintiff's Response to Defendants' Motion for Summary Judgment, at 58. At the time of the stop, he asked one of the officers why he had been pulled over but could not recall the officer's answer. *Id.,* at 68. The officers found a machete in the truck. *Id.*

It does not appear that the officer involved in the incident was deposed; however, he has provided an affidavit. Defendant Hester was a Deputy Sheriff for Rutherford County at the time of the incident. Exhibit A, Declaration of Eric Hester, *attached to* Defendant's Motion, at ¶ 1. He was in a marked patrol car traveling westbound on the Highway 74 By–Pass when he saw a white pick-up truck in his rearview mirror which was approaching him at a high rate of speed and was darting in and out of traffic. *Id.,* at ¶'s 2, 4. When the truck got closer to the patrol car, it rapidly slowed down and came alongside of the patrol car. *Id.,* at ¶ 5. Hester looked over at the occupant and noticed that he was not wearing his seatbelt. *Id.* Hester determined to follow the truck due to his observations. *Id.,* ¶ 6. At about the same time, another vehicle approached him with its lights flashing and the driver was pointing at the Plaintiff as if to alert the officer to him. *Id.* Hester activated his overhead blue lights, but the truck did not stop. *Id.* He saw the driver reach down towards the floorboard and then Hester turned on his siren. *Id.* The driver still did not yield, causing Hester to notify his dispatcher; however, about 9/10 of a mile later, the truck did stop after turning onto a side road. *Id.*

Hester approached the Plaintiff and asked for his license, but Plaintiff said he did not have it with him. *Id.,* at ¶ 7. Hester asked Plaintiff's name and inquired as to why he had been driving so recklessly. *Id.* However, Plaintiff replied that he had not done anything wrong. *Id.*

As alleged in the Plaintiff's complaint, Hester testified that at about this time Robin Spence pulled up behind the officer's car. *Id.,* at ¶ 8. Hester left the Plaintiff and walked back to her vehicle at which point she advised Hester that she had earlier alerted him to the Plaintiff by flashing her lights because the Plaintiff had passed her speeding at about 100 miles per hour and had almost run her off the road. *Id.* Spence told Hester that she knew the Plaintiff because she had collected child support from him in the past. *Id.*

Hester then went back to the Plaintiff's truck and told him to exit the vehicle. *Id.,* at ¶ 9. Although Plaintiff refused to do so at first, he did comply; Hester then told him to place his hands on the hood of the truck. *Id.* Hester then advised the Plaintiff he was under arrest because Hester concluded that Plaintiff, who had been cursing at the officer, had become disorderly. *Id.* When he told the Plaintiff to put his hands behind his back, Plaintiff did not do so; instead Hester grabbed his right wrist to bring it behind his back for handcuffing. *Id.* At that point, the Plaintiff pulled away from the officer who then pushed him to the ground by tripping his leg with the officer's foot. *Id.* According to Hester, he kept hold of the Plaintiff's right hand throughout this procedure. *Id.* Officer Thrift of the Rutherfordton Police Department arrived at the scene at this time and assisted in handcuffing the Plaintiff and then lifting him onto his feet. *Id.,* at ¶ 10. After the arrest, the officers found a machete behind the console of the truck. *Id.,* at ¶ 12.

Plaintiff was charged with resisting an officer, failure to stop, disorderly conduct, reckless driving, failure to wear a seat belt and carrying a concealed weapon. In the state district court, Plaintiff was acquitted of resisting an officer and failure to stop and the district attorney dismissed the charge of disorderly conduct. In superior court, Plaintiff was acquitted of reckless driving and failure to wear a seat belt, but convicted of carrying a concealed weapon. Although no date is provided concerning his acquittals, he was sentenced for carrying a concealed weapon on December 4, 1997. On January 5, 1998, his motion for appropriate relief was denied.

Defendants have provided an affidavit from John E. Davis, M.D., who treated the Plaintiff on July 5, 1996, the day after the incident at issue. Exhibit D, Declaration of John E. Davis, M.D., *attached to* Defendants' Motion. Dr. Davis averred that during or shortly after treating the Plaintiff on that date he created a medical record, a copy of which is attached to the affidavit. *Id.*, at ¶ 2. That record has been maintained by his office in the regular course of business and the information contained in the record was provided to the doctor by the Plaintiff. *Id.* Dr. Davis stated that if called to testify, he would do so in accordance with his affidavit and the medical record. *Id.*, at ¶ 1.

The medical record discloses that the Plaintiff saw Dr. Davis on July 5, 1996, for follow up on an injury to Plaintiff's left hand which occurred about three months earlier and which had led to a worker's compensation claim. Medical Record, dated July 5, 1996, *attached to* Davis Affidavit. Dr. Davis noted that Plaintiff had completely recovered from that injury without any permanent impairment. *Id.* He also noted that

[t]he patient is here because he punched a wall yesterday injuring his right hand. This is swollen though he does not feel that it is as severely swollen as the left was.

X-ray Exam: Reveals a fracture of the neck of the 5th metacarpal with 50 or 60 degrees of angulation. I have recommended that this be manipulated the same as the opposite one. Because of financial considerations he is going to discuss it with his mother first.

*Id.* Three days later, the physician placed the Plaintiff's finger in a splint which was to be maintained for five weeks.[1] *Id.*

### III. DISCUSSION

Defendants have moved for summary judgment on all remaining claims, *i.e.*, Plaintiff's allegations pursuant to 42 U.S.C. § 1983 that he was subjected to false arrest, an unconstitutional seizure, malicious prosecution and excessive force.[2]

 "To succeed on an action for false arrest [pursuant to 42 U.S.C. § 1983], [Plaintiff] must demonstrate that his arrest was not supported by probable cause." *North Carolina v. McCurry*, 175 F.3d 1016 (table), 1999 WL 152622 *1 (4th Cir.1999) (citing *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir.1974)). If the Plaintiff does not show that probable cause was lacking, summary judgment in favor of the officer is appropriate. *Rowland v. Perry*, 41 F.3d 167, 169, 174 (4th Cir.1994); *accord, United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir.1996) (The determination of probable cause is an issue of law.). "A warrantless arrest, like the one in this case, requires that the arresting officers possess probable cause to believe that the person has committed or is committing a felony offense.... To determine whether probable cause existed, courts look to the

---

1. Subsequent to the presentation of this information in the Defendants' motion, the Plaintiff deleted the allegation in his Amended Complaint which claimed the officer had broken his finger during the arrest. Plaintiff's Voluntary Striking of Certain Allegations of Complaint, filed August 25, 2000.

2. The warrantless arrest and unconstitutional seizure are the same claim because the arrest and seizure occurred simultaneously. *Wells v. Bonner*, 45 F.3d 90, 94 n. 1 (5th Cir.1995).

totality of the circumstances known to the officers at the time of the arrest." *United States v. Al–Talib,* 55 F.3d 923, 931 (4th Cir.1995) (citing *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

■ Even under Plaintiff's version of the events here, Defendant Hester had probable cause to arrest him. *Kelly v. Bencheck,* 107 F.3d 866 (table), 1997 WL 76041 (4th Cir.1997). The Plaintiff testified he was arrested because Robin Spence reported to the police that he had been "running everybody off the road." Defendant Hester averred that Spence approached him with flashing lights, pointed to the Plaintiff, and followed Hester to the point of the stop at which time she identified the Plaintiff as having been speeding. Indeed, Hester had already seen the Plaintiff speeding behind his patrol car. The fact that the Plaintiff was later acquitted of some of the charges made subsequent to his arrest does not alter the determination of whether probable cause existed at the time thereof. *Id.* The record, as now amplified, shows that the Plaintiff's. § 1983 claims based on unconstitutional seizure stemming from his warrantless arrest must be dismissed.[3]

■ The next issue is whether the claim pursuant to § 1983 for malicious prosecution in connection with the charges which were dismissed or for which the Plaintiff was acquitted survive summary judgment. The Fourth Circuit has recent-

ly clarified that "[w]hat is conventionally referred to as a ' § 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." *Lambert v. Williams,* 223 F.3d 257, 259 (4th Cir.2000). As applied to the facts of this case, the only Fourth Amendment violation on which such a claim may be based is the Plaintiff's warrantless arrest.[4] In the context of the remedy provided by § 1983, malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff by the defendant was without probable cause to support it and a termination thereof occurred in favor of the plaintiff. *Id.,* at 260. A malicious prosecution claim brought pursuant to § 1983 is "a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Id.*

> The purpose of incorporating common law principles into § 1983 is not to create new causes of action in addition to those already found within the Constitution and federal statutes covered by § 1983. Rather, federal courts incorporate the common law into § 1983 in recognition of the fact that § 1983 was designed to create a "special species of tort liability," founded on rights originating in the Constitution and certain federal statutory law .... What we termed a "malicious prosecution" claim in *Brooks /v. City of Winston–Salem,* 85 F.3d 178 (4th Cir.1996)/, is simply a claim founded

**3.** There appears to be some confusion as to the undersigned's prior rulings on the Defendants' motion to dismiss. That motion was predicated on Defendants' argument that the Plaintiff was collaterally estopped from bringing this action because he was ultimately convicted of one of the charges pressed by Hester. In addressing the Plaintiff's objections to the Magistrate Judge's Memorandum and Recommendation on the motion to dismiss, the undersigned noted Plaintiff's position that the initial stop of his vehicle was without probable cause. Memorandum and Order, filed December 17, 1999, at 8 addressing Plaintiff's Objections, filed October 28, 1999 at 1–2 ("Defendant Hester had no probable cause at the time the stop was made."). Indeed, in the Defendants' motion to dismiss,

the same language was used to address the Plaintiff's contention. Memorandum of Law in Support of Motion to Dismiss, filed August 17, 1999 at 7 ("Wilkerson argued that there was no probable cause for the traffic stop such that his conviction should be set aside."). The undersigned did not implicitly rule that an officer must have probable cause to effect a traffic stop but merely addressed the Plaintiff's objections.

**4.** The undersigned has previously ruled that no such claim may be stated in connection with the search of the Plaintiff's vehicle because he was convicted of carrying a concealed weapon. Memorandum and Order, filed December 17, 1999.

on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.

*Id.*, at 262 (citations omitted). Because the undersigned has concluded that the warrantless arrest and seizure of the Plaintiff was supported by probable cause, and thus, constitutional, the claim for malicious prosecution also must fall because the seizure "was not violative of the Fourth Amendment." *Id.*, at 262.

■ The remaining claim is Plaintiff's excessive force cause of action. Plaintiff testified that his hand grazed the asphalt at the time that he was pushed down, but the officers did not physically abuse him during the arrest. Defendants presented an affidavit from the Plaintiff's physician who treated him the day after the incident in which the doctor averred that the Plaintiff reported the injury to his right hand occurred after he put his hand through a wall. Plaintiff has presented nothing in opposition to this affidavit except his pleading in which he withdraws the allegation that the officer broke his finger. Although the Defendants as the moving parties have the initial burden to show a lack of evidence to support Plaintiff's case, when this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Shaw, supra.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*

The undersigned concludes that the Plaintiff has failed to show that a triable issue of fact exists as to the injury to his hand. In making this conclusion, the undersigned has not made any credibility assessment, a matter which is strictly for the jury. However, the Plaintiff has failed in any manner to refute the affidavit from the treating physician; indeed, the with-drawal of the allegation that his finger was broken during the arrest is tantamount to an admission that the same did not occur. "Summary judgment in favor of a defendant in a civil action is appropriate when, after adequate time for discovery and upon motion, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial." *LeBlanc v. Cahill,* 153 F.3d 134, 148 (4th Cir.1998). Such is the case here.

Because the claims against Defendant Hester have all been dismissed, the claims against the remaining Defendants also fail.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion for summary judgment is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for a writ of *habeas corpus ad testificandum* is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that the pretrial conference scheduled for August 29, 2000, is hereby canceled and the Clerk of Court is directed to so notify the parties by sending counsel copies of this Memorandum and Order and Judgment by facsimile forthwith.

A Judgment is filed herewith.

### JUDGMENT

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendants' motion for summary judgment is **ALLOWED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.

## SECOND MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendants' Motion for Summary

Judgment. Having considered that motion and reviewed the pleadings, the undersigned enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I. Background

#### A. Procedural History

After first allowing plaintiff to amend his pleadings by filing a 39–page amended complaint, the district court dismissed a number of claims against a number of defendants who are no longer parties to this action. *See* Order of December 17, 1999. As to the remaining parties, plaintiff's claim for malicious prosecution resulting in the conviction for carrying a concealed weapon was dismissed, but the following claims, brought pursuant to 42, United States Code, Section 1983, were allowed to move forward:

(1) false arrest;

(2) unconstitutional seizure;

(3) malicious prosecution as to the charges of which he was acquitted (or which were dismissed); and

(4) excessive force in effectuating arrest.

A number of claims against these remaining defendants were also dismissed in accordance with Rule 12, Federal Rules of Civil Procedure.

After preliminary dispositive motions were resolved, an Initial Pretrial Conference was held on January 31, 2000, at which deadlines were established for discovery, dispositive motions, and trial. Despite the early establishment of deadlines, plaintiff moved for and received from the district court a 30–day extension of time within which to complete discovery. Within the times allowed, defendants filed their Motion for Summary Judgment. The respective parties have timely filed memoranda in support, response, and reply. As discussed below, plaintiff seeks to postpone decision on such motion under Rule 56(f) based upon the unavailability of affidavits, but has failed to show cause that would justify that relief.

#### B. Factual History

The following facts are undisputed and supported by uncontroverted evidence of record. At midday on July 4, 1996, defendant Eric Hester, a Rutherford County Sheriff's Department deputy, was traveling in a marked patrol vehicle westbound on Highway 74 Bypass in the City of Spindale. He looked in his rearview mirror and saw a white pickup truck approaching at a high rate of speed, possibly as fast as 80 miles per hour, and darting in and out of traffic. Hester avers that he considered the combination of excessive speed and frequent lane changes to be extremely dangerous, amounting to reckless driving, in violation of Chapter 20–140(b) of the North Carolina General Statutes.

As the pickup neared Hester, it slowed down, and by the time it came along his right side, it was traveling the posted speed limit of 45 miles per hour. Hester avers that he looked over and saw that the driver's seatbelt buckle was in its upright stored position, a violation of North Carolina law requiring the use of seatbelts. N.C. Gen.Stat. § 20–1 35.2A. After Hester moved in behind the pickup to pull it over, he saw a sport utility vehicle, approaching from the rear, headlights flashing, and the driver of that vehicle pointing toward the pickup, as though trying to alert Hester to stop it.

Hester turned on his overhead blue lights and siren in an effort to stop the pickup, but it continued on without stopping, which Hester avers violates North Carolina law requiring a vehicle to yield to emergency vehicles displaying blue lights and siren. N.C. Gen.Stat. § 20–157(a). Plaintiff stopped the vehicle three-tenths of a mile later by turning off Railroad Avenue onto St. Helena Drive, which is within the City of Rutherfordton.

Hester avers that he then approached plaintiff, who was the driver and sole occupant, and asked him for his driver's license. Plaintiff disputes Hester's version and states that Hester never asked for his license or registration. According to Hes-

ter, plaintiff told him that he did not have his license with him, and plaintiff does not dispute the fact that he did not have his license with him. Hester avers that failure to carry a license is itself a violation of North Carolina law. N.C. Gen.Stat. § 20–7(a). Hester then asked plaintiff his name, why he had been driving so recklessly, and why he had failed to stop for the blue lights and siren. All plaintiff said in response was that he had not done anything wrong.

Around this time, the driver of the sport utility vehicle, who had earlier pulled up behind Hester flashing her lights, arrived. Hester walked back to her vehicle and immediately recognized her as Robin Spence, a clerk in the Rutherford County Courthouse, to whom he had waved shortly before first observing plaintiff's truck. Hester states that Spence told him that after she turned onto the Highway 74 Bypass from K–Mart, plaintiff passed her at about 100 miles per hour and nearly ran her and the driver of another car off the road. During their conversation, plaintiff leaned out the driver's side window of the pickup and looked back at them, whereupon Spence confirmed plaintiff's identity as Sterling Wilkerson and told Hester she had collected child-support payments from Wilkerson in her job as court clerk.

While the plaintiff's version of events to this point differs from Defendant Hester's, the differences have not been substantive. From this point forward, the versions of the respective parties differ markedly; however, as discussed below, such differences are immaterial, inasmuch as discovery has revealed undisputed facts which make plaintiff's claims wholly without basis as a matter of law.

The following is Defendant Hester's version. He returned to the pickup and asked plaintiff to get out. Plaintiff refused at first and started cursing, which Hester concluded constituted disorderly conduct. Plaintiff eventually complied, and Hester told him he was under arrest and to put his hands behind his back. When plaintiff refused to do so, Hester took plaintiff's right wrist and attempted to bring it behind plaintiff's back for handcuffing, but plaintiff pulled away, which Hester considered to be resisting arrest. N.C. Gen.Stat. § 14–223. In an effort to overcome plaintiff's resistance and take him into custody, Hester tripped plaintiff's leg with his foot and then pushed plaintiff onto his stomach. At about that time, Officer Chuck Thrift of the Rutherfordton Police Department arrived on the scene and assisted Hester in getting plaintiff's hands cuffed behind his back. Plaintiff was then lifted to his feet and placed in the rear seat of Hester's patrol car.

Plaintiff testified that once he was out of the car, Hester slammed his head into the hot hood of his truck, threw him to the ground, and painfully placed his knee in plaintiff's back. He further avers that it was at this time that a finger on his right hand was broken. It is undisputed that at no time during arrest, transportation, or booking did plaintiff complain about a broken finger.

After placing plaintiff in his patrol car, Hester conducted a search of plaintiff's truck incident to arrest. Hester discovered a machete behind the center console portion of the seat. Plaintiff was then driven to the county jail for booking and charged with resisting an officer, failure to stop for blue lights and siren, disorderly conduct, reckless driving, failure to wear a seatbelt, and carrying a concealed weapon.

In state district court, plaintiff was acquitted of resisting an officer and failure to stop for an emergency vehicle, but was convicted of reckless driving, failure to wear a seatbelt, and carrying a concealed weapon. The district attorney dismissed the charge of disorderly conduct. Plaintiff appealed the convictions to superior court and, upon *trial de novo*, was acquitted of reckless driving and failure to wear a seatbelt. He was again convicted on the concealed-weapon charge.

As discussed below in the "Standard" section, the undersigned has considered all facts in a light most favorable to plaintiff,

including those alleged in his amended complaint, wherein he avers the following:

[D]efendant Hester slammed the plaintiff on the ground with great, violent force and might, breaking plaintiff's finger.

Amended Complaint, ¶ 40(v)(2)(3). Based upon that allegation and the in-court representation by plaintiff's counsel, the undersigned recommended to the district court that plaintiff's claim of excessive force survive Rule 12(b)(6) dismissal, inasmuch as an allegation of a broken bone in effectuating an arrest states a cause of action.

Contrary to his averment set out above, plaintiff testified at his deposition that the takedown only resulted in scratches to his hand, knee, and the side of his face and that none of his superficial injuries left any scarring. Plaintiff acknowledged at that deposition that he was never struck by the police and that the force used against him was limited to being pushed to the ground and handcuffed, with Officer Thrift holding him down by placing his knee on plaintiff's back. *See* Plaintiff's Deposition at 18, 27, & 28; *c.f.*, Amended Complaint, ¶ 40(vi)(2). Further, plaintiff admits that he experienced no pain or other sensation in his right finger when he was taken to the ground. Plaintiff cannot even say how or where his right hand landed.

Finally, and perhaps most probative, the medical records maintained by Dr. John E. Davis, M.D., plaintiff's long-term treating physician, reflect that plaintiff presented at Dr. Davis's office the day following his arrest and gave the following history of his injury, as recorded by Dr. Davis:

The patient is here because he punched a wall yesterday injuring his right hand. This is swollen though he does not feel that it is as severely swollen as the left was.

Defendants' Brief in Support, Exhibit D (plaintiff had broken a finger in his left hand several months earlier, which Dr. Davis had also treated). Dr. Davis's examination revealed a fracture of the fifth metacarpal. In his declaration, Dr. Davis states that the "information contained therein relating to the cause of injury was provided to me by Sterling Wilkerson himself." *Id.*

Defendant Hester's declaration is consistent with plaintiff's admissions at his deposition and the notes kept by Dr. Davis in the regular course of his medical practice. Defendant Hester declares that from the moment he grabbed plaintiff's right hand or wrist while plaintiff was still standing, he held onto it until plaintiff was on the ground and successfully handcuffed. Because of such unyielding hold on plaintiff's right wrist, "his right hand never struck the ground." Hester Declaration, at ¶ 9.

Plaintiff was asked at his deposition if he was truthful in what he told Dr. Davis regarding the cause of the injury, and plaintiff answered in the affirmative. Plaintiff's Deposition, at 16–17. The undersigned takes judicial notice that a "depressed knuckle" over the fifth metacarpal joint, which Dr. Davis diagnosed, is consistent with striking a wall with a closed fist rather than breaking a forward fall with an open hand.

Reading all of the evidence in a light most favorable to plaintiff, including those *reasonable* inferences which can be drawn therefrom, Defendant Hester used force in effectuating plaintiff's arrest that caused minor cuts and abrasions that did not result in scarring. There is also, arguably, evidence that Officer Thrift placed his knee on plaintiff's back to hold him down, which the district court has already determined to fail even the minimal Rule 12(b)(6) standard. *See* Order of December 17, 1999.

There is absolutely no evidence to support plaintiff's allegation in the complaint that Defendant Hester in any way caused the breaking of plaintiff's finger. The undersigned will discuss below whether minor cuts and abrasions are sufficient to support a claim for use of excessive force.

## II. Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.,* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of defendants' Motion for Summary Judg-

ment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle,* 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979).

## III. Discussion

### A. Plaintiff's Section 1983 Claim for False Arrest

Unlike in the criminal arena, a plaintiff in a civil action bears the burden of proving the complete absence of probable cause for his arrest. *Stemler v. City of Florence,* 126 F.3d 856, 871 (6th Cir.1997). Ultimately, the question of whether probable cause existed, justifying plaintiff's arrest, is a question of law for this court. *United States v. Miller,* 925 F.2d 695, 698 (4th Cir.1991).

It is undisputed that plaintiff's arrest was occasioned by a number of offenses that Defendant Hester perceived and that plaintiff successfully defended against most of those offenses at trial. For fourth-amendment purposes, an arrest on multiple charges is a "single transaction," and probable cause will be found to exist, so long as it existed for at least one offense. *Barry v. Fowler,* 902 F.2d 770, 773 n. 5 (9th Cir.1990).

In *Calusinski v. Kruger,* 24 F.3d 931 (7th Cir.1994), the appellate court held, as follows:

> At the time of the arrest police officers need probable cause that *a* crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged.

*Id.,* at 935. Likewise, in *Wells v. Bonner,* 45 F.3d 90 (5th Cir.1995)—a case cited by the district court in allowing plaintiff's false-arrest claim to proceed past dismissal—the appellate court held, as follows:

> The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on

the validity of the arrest. If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the arrest was supported by probable cause, and the claim for false arrest fails.

*Id.*, at 95.

The undersigned has reviewed current case law to determine the standard applicable to fourth-amendment claims of unlawful arrest.[1] It appears that while consideration of offenses actually charged is appropriate, such review should also take into consideration offenses which the officer perceived at the time of arrest, regardless of whether he later brought charges. Plaintiff acknowledges as much in the first paragraph of his objections to the undersigned's first Memorandum and Recommendation:

> The question of whether probable cause exists for purposes of a claim for false arrest and malicious prosecution is at the time the prosecution begins, not after the verdict is reached.

Docket Entry 38, at 1 (syntax error in original; citation omitted). To put it in a more simplistic fashion, probable cause is determined by viewing a snapshot in time: at the time of arrest, did the officer have reason to believe that the suspect had committed a criminal offense? Whether a jury, judge, or prosecutor later acquits or dismisses a charge is not relevant to the probable-cause inquiry.

The fourth amendment protects persons from unreasonable seizures. It does not, however, open up the state treasury or an officer's bank account every time a conviction is not secured. The general rule is

that seizures having the essential attributes of a formal arrest are unreasonable unless supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). An arresting officer must have probable cause to believe that the person arrested committed a criminal offense. Probable cause exists if "*at that moment* the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (only facts and circumstances known at time of arrest may be used to support a finding of probable cause). A totality-of-circumstances test is employed to determine probable cause. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Although plaintiff was not ultimately charged with the predicate offense, Defendant Hester contends that the arrest of plaintiff was lawful, when viewed at the time of arrest, because Hester had probable cause to believe that plaintiff was operating a motor vehicle without having in his possession an operator's license, a misdemeanor. The relevant law of the state (with which a reasonably prudent officer is charged with knowing) was, and remains, that the arrest of a motorist is "constitutionally permissible" on the alternative basis of driving without a license, despite the

---

1. Defendants have taken issue with the decision of the district court, which affirmed in part and reversed in part the undersigned's recommendation. Specifically, they have taken issue with the district court's implicit holding that the vehicle stop must be supported by probable cause, rather than *reasonable suspicion*, and that the convictions in state district court for the underlying traffic offenses would not invoke Section 1983 collateral estoppel.

A problem with the recommendation process, especially where multiple recommendations are entered in the same case, is that the

undersigned is confined to the law of the case as rendered by the district court. Deference to that superior court would prohibit the undersigned from departing its reasoning. It is the burden of a moving party to seek reconsideration or interlocutory appeal, and the undersigned will not attempt to overturn the decision of a higher court. Specific resolution of defendants' exceptions, which are made in good faith and in accordance with counsel's obligation of due diligence, are not necessary for decision herein and are simply noted for purposes of further review.

fact that the motorist is not ultimately charged with that offense. *State v. Johnston*, 115 N.C.App. 711, 714–15, 446 S.E.2d 135 (1994).

In this case, Defendant Hester has presented undisputed evidence that plaintiff was not in possession of a driver's license (which plaintiff admits) and that he knew such fact immediately before he arrested plaintiff. North Carolina law is clear and undisputed that an officer can arrest a motorist for failure to carry a license, and that even where the charge is not lodged, probable cause will exist for the arrest. *See State v. Johnston, supra.* Reviewing the facts and circumstances surrounding plaintiff's arrest, as viewed from the perspective of a reasonable officer faced with the information Defendant Hester undisputedly had in his possession, probable cause existed as a matter of law, justifying plaintiff's arrest.

In addition, the undisputed evidence of record reveals that immediately prior to plaintiff's arrest, former Defendant Spence arrived on the scene and reported that she observed plaintiff driving his truck in a careless and reckless manner, that she estimated his speed at 100 miles per hour, and that he had nearly collided with her and another motorist. Such citizen report was from a person whom Defendant Hester knew, to his own satisfaction, to be reliable; an employee of the state-court system; and who had provided a positive identification of the suspect. The information corroborated his own first-hand observations of plaintiff's reckless operation of a motor vehicle.

Tips may establish probable cause when corroborated by independent police investigation. As long as the probable veracity and basis of knowledge of persons supplying hearsay information, along with the results of independent police investigation or observation, make it reasonably likely, based on a totality of circumstances, that the information is correct, probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *United States v. Miller*, 925 F.2d 695 (4th

Cir.) *cert. denied*, 502 U.S. 833, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991), probable cause was found where the officer's observations were corroborated by a substantial portion of an informant's tip. *See also United States v. Porter*, 738 F.2d 622, 625–26 (4th Cir.) (en banc) (informant's tip and corroboration obtained by investigatory stop provided probable cause), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984).

Although plaintiff was successful in securing an acquittal in superior court on the charge of reckless driving after having been convicted on that charge in district court, a jury's finding that the state failed to prove his guilt "beyond a reasonable doubt" does not carry with it a finding that probable cause did not exist for the arrest. "Probable cause," while presumed where a conviction is obtained, is not automatically eliminated where an acquittal is returned, because it is not an essential element of *any* offense. The legal fiction that provides for collateral estoppel is not a two-way street in this context. As plaintiff earlier conceded, "probable cause" is viewed as it appeared when the case began, not when it ended. Defendant Hester's firsthand observations of plaintiff's reckless driving, coupled with a citizen's contemporaneous report, which the officer had good reason to believe was reliable, provided the officer with probable cause, justifying the arrest.

The overriding concern expressed by plaintiff in both his original complaint and his amended complaint, and which this court takes most seriously, was that the stop and arrest were racially motivated. The undisputed evidence of record now indicates that not only does plaintiff not have any evidence of such an unlawful motive, he does not now believe the arrest was motivated by race. *See* Plaintiff's Deposition, at 65.

To summarize, Defendant Hester has articulated a *reasonable suspicion*, justifying the initial traffic stop—firsthand observation of a driver recklessly endangering

the public and failing to wear a seatbelt. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir.1992). Plaintiff's theory (racial motivation) proffered to refute such showing has not come to fruition in any regard. As to the actual arrest, which occurred when Hester ordered plaintiff out of the car and took physical control over the person of the plaintiff, Hester had *probable cause* to believe that plaintiff had no operator's license in his possession and that he had recklessly endangered the lives of fellow motorists, misdemeanors for which North Carolina law allows an officer to arrest the suspect. For the reasons set out above, the undersigned will recommend that summary judgment be granted to defendants on this claim.

### B. Plaintiff's Section 1983 Claims for Malicious Prosecution

A Section 1983 cause of action for malicious prosecution does not lie where a criminal defendant is convicted on at least one of the charges lodged. It also will not lie where, as here, the plaintiff fails to show an unlawful seizure under the fourth amendment.

In case law that has developed since the district court's December 17, 1999, Order, the Court of Appeals for the Fourth Circuit has defined what does and does not constitute a Section 1983 malicious-prosecution claim. In *Lambert v. Williams,* 223 F.3d 257 (4th Cir.2000),[2] the appellate court held, as follows:

> There is at present an "embarrassing diversity of judicial opinion" over the composition, or even existence, of a claim for "malicious prosecution" founded in § 1983. *Albright v. Oliver,* 975 F.2d 343, 345 (7th Cir.1992), rev'd, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).
>
> \* \* \* \* \* \*
>
> We now hold that § 1983 does not empower a plaintiff to bring a claim for

malicious prosecution simpliciter. What is conventionally referred to as a " § 1983 malicious prosecution" action is nothing more than a § 1983 claim arising from a Fourth Amendment violation.

\* \* \* \* \* \*

The common law tort of malicious prosecution is well-established: a prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed.1984). Common law malicious prosecution is not itself redressable under § 1983, however, since § 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); see also United States v. Lanier, 520 U.S. 259, 272, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("[C]ivil liability under § 1983 ... may be imposed for deprivation of a constitutional right if, but only if, in light of pre-existing law the unlawfulness [under the Constitution] is apparent.").

Initially, some lower courts, including this Court, held that a plaintiff could prove a violation of substantive due process by proving the common law elements of malicious prosecution and state action. See, e.g., Goodwin v. Metts, 885 F.2d. The Supreme Court rejected this approach, however, in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Albright involved a § 1983 claim that the petitioner styled a "malicious prosecution" claim, in which the petitioner contended that his "'liberty

---

**2.** Inasmuch as *Lambert* was published after the parties briefed this matter, respective counsel are encouraged to fully explore its implications in their objections.

interest' to be free from criminal prosecution except upon probable cause" constituted a violation of substantive due process. 510 U.S. at 268, 114 S.Ct. 807. The Albright Court did not produce a majority opinion, but a majority of justices agreed that the right to be free from prosecution without probable cause was not a substantive due process right, but rather was a violation of the petitioner's Fourth Amendment right to be free from unreasonable seizures. See id. at 271, 114 S.Ct. 807 (plurality); id. at 275, 114 S.Ct. 807 (Scalia, J., concurring); id. at 280, 114 S.Ct. 807 (Kennedy, J., concurring in judgment and joined by Thomas, J.); id. at 281, 114 S.Ct. 807 (Ginsburg, J., concurring); id. at 288–89, 114 S.Ct. 807 (Souter, J., concurring in judgment). The plurality noted specifically that "substantive due process may not furnish the constitutional peg on which to hang [a malicious prosecution] 'tort.'" Id. at 271 n. 4, 114 S.Ct. 807. Since the petitioner in Albright did not raise a Fourth Amendment argument, the Court did not have occasion to reach the Fourth Amendment issue in its holding. Thus, although the various opinions in Albright "add[ ] up to a fairly strong sentiment against constitutionalizing malicious prosecution," 1A Martin A. Schwartz, Section 1983 Litigation § 3.20, at 322 (3d ed.1997), the decision itself ultimately does not reach the question.

In the wake of Albright, the courts of appeals have diverged, some finding that § 1983 does not provide a malicious prosecution cause of action, some that it does, some that it might. The Third Circuit has adopted a variation of the theory offered by the Lamberts, see Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir.1998) ("Albright stands for the broader proposition that a section 1983 [malicious prosecution] claim may be based on a constitutional provision other than the Fourth Amendment."), but no other circuit has followed suit. At least two circuits have indicated that the common law elements of malicious prosecution may establish a Fourth Amendment violation with respect to defendants acting under color of state law. See, e.g., Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir.1999); Cervantes v. Jones, 188 F.3d 805, 808–09 (7th Cir.1999). Others have held that the malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. See, e.g., Britton v. Maloney, 196 F.3d 24, 28–29 (1st Cir.1999); Uboh v. Reno, 141 F.3d 1000, 1003 (11th Cir.1998); Spiegel v. Rabinovitz, 121 F.3d 251, 256 (7th Cir.1997); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir.1997); Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996).

We adopted the latter view in Brooks v. City of Winston–Salem, 85 F.3d 178 (4th Cir.1996). The appellant in Brooks alleged that he had been arrested and prosecuted on state criminal charges in violation of the Fourth, Fifth, and Fourteenth Amendments, because his arrest was ·not supported by probable cause and the authorities continued his prosecution after it was apparent that he was innocent. We found that those claims were "analogous to two common-law causes of action—false arrest and malicious prosecution," id. at 181 (citations omitted), and proceeded to consider the appellant's constitutional claims in light of the elements of those common law torts. However, although we styled the claim as a § 1983 malicious prosecution claim and incorporated common law elements, we did not treat the claim as separate and distinct from the appellant's constitutional allegations. [FN2] We made it clear, rather, that the foundation for his claim was "a seizure that was violative of the Fourth Amendment." Id. at 184.

By incorporating the common law into our § 1983 analysis, we follow a consistent line of authority which has looked to common law torts bearing similarity to the constitutional rights at issue and

incorporated into those claims common law elements of damages, prerequisites for recovery, and immunities. See, e.g., Heck v. Humphrey, 512 U.S. 477, 483–84, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (finding legality of confinement claim analogous to malicious prosecution tort, and incorporating into the federal claim the common law prerequisite of termination of the prior criminal proceeding in favor of the accused); Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 305–06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (incorporating common law damages principles into § 1983 claim and finding that the abstract "value" of constitutional rights cannot form the basis of compensatory relief); Carey v. Piphus, 435 U.S. 247, 253–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (structuring compensatory damages principles under § 1983 by reference to common law); Imbler v. Pachtman, 424 U.S. 409, 422–29, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (incorporating common law principle of prosecutorial immunity). The purpose of incorporating common law principles into § 1983 is not to create new causes of action in addition to those already found within the Constitution and federal statutes covered by § 1983. Baker v. McCollan makes this clear enough. See 443 U.S. at 144[, 99 S.Ct. 2689]. Rather, federal courts incorporate the common law into § 1983 in recognition of the fact that § 1983 was designed to create a "special species of tort liability," Imbler, 424 U.S. at 417[, 96 S.Ct. 984], founded on rights originating in the Constitution and certain federal statutory law, and that:

> over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the

elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.

Carey, 435 U.S. at 257–58[ 98 S.Ct. 1042]. Our analysis in Brooks, understood in light of these precedents, makes clear that there is no such thing as a " § 1983 malicious prosecution" claim. What we termed a "malicious prosecution" claim in Brooks is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. See Brooks, 85 F.3d at 183. It is not an independent cause of action.

*Id.,* 223 F.3d at \*259–62 (footnotes omitted; emphasis added).

Clearly, *Lambert* provides that there is no Section 1983 cause of action for malicious prosecution; rather, it appears that *Lambert* holds that a Section 1983 cause exists for unlawful seizure only where the criminal proceeding terminates in a plaintiff's favor. Such a cause would incorporate relevant elements of the common-law tort of malicious prosecution. Viewing plaintiff's evidence in a light most favorable to him, his claim fails *ab initio* because the prior proceeding resulted in a conviction, which is not favorable.[3]

Plaintiff cannot satisfy the common-law elements of such a hybrid seizure claim, which are, as follows:

(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant;

(2) termination of that proceeding favorable to the plaintiff;

(3) lack of probable cause to support that proceeding; and

---

**3.** To hold that a "favorable result" is anything less than total acquittal or dismissal would result in legal and logical absurdity. If this court were to open up the fourth amendment in the manner advocated by plaintiff, a person charged with first-degree murder, but only convicted of the lesser offense of voluntary manslaughter, could somehow sue the officer for unlawful seizure.

(4) the defendant's malice.

It is wholly undisputed that the "prior proceeding" did not terminate favorably for plaintiff. He was ultimately convicted of carrying a concealed weapon in his truck. Plaintiff's claim, therefore, fails on the second element. His claim also fails on the fourth element, inasmuch as he has testified that he does not believe that the prosecution was racially motivated and has not provided any evidence of any malice on the part of these defendants.

Not only is such a claim precluded, based on the undisputed facts of this case, but "malicious prosecution," as an extension of plaintiff's claim of false arrest, is not viable because, as in *Brooks, supra,* the foundation of such is "a seizure . . . violative of the Fourth Amendment," which, as discussed above, is without merit.

The undersigned, therefore, must recommend that summary judgment be granted on plaintiff's *de jure* Section 1983 claims of malicious prosecution, which the court deems to be hybrid unlawful-seizure claims to which common-law elements are applied under *Lambert.*

### C. Section 1983 Claims for Excessive Force

As discussed at length above, the undisputed record presented to the undersigned on summary judgment indicates that plaintiff sustained a broken finger on or about July 4, 1996, when he hit a wall with a closed fist. Not only does plaintiff's own testimony reflect this fatal flaw, plaintiff's *own* treating orthopedist has provided a declaration and treatment notes that reflect what plaintiff told him the day following his arrest, *i.e.,* that plaintiff caused his own injury by hitting a wall. Plaintiff testified that he told his doctor the truth. There can remain no genuine issue of material fact as to the cause of plaintiff's broken finger.

The allegation contained in his *verified* complaint—that Defendant Hester broke plaintiff's finger by throwing him to the ground—therefore, amounts to little more than perjury at this time. The request of plaintiff to withhold decision on the Motion for Summary Judgment so that he can secure unspecified testimony (that would run counter to his *sworn* deposition testimony) is facially without merit under Rule 56(f). *See Kelly v. Marcantonio,* 187 F.3d 192, 203 (1st Cir.1999) (speculative assertions that unspecified facts have not been produced are insufficient to invoke Rule 56(f) relief).

All the injuries that remain for excessive-force analysis are scratches, which plaintiff admits were superficial and did not result in scarring. The plaintiff's brief reveals a fundamental misunderstanding of the nature of the *de minimis* standard applicable to Section 1983 claims for excessive force. The undersigned, therefore, will start with the basics.

Under the fourth amendment, objective reasonableness provides the standard for use of force in effectuating an arrest. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Martin v. Gentile,* 849 F.2d 863 (4th Cir.1988). The test for excessive force requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner, supra,* at 8, 105 S.Ct. 1694. The standard for measuring the reasonableness of an arrest is wholly objective; subjective bad intentions do not make a constitutional violation out of an otherwise reasonable seizure. *Martin v. Gentile,* 849 F.2d 863 (4th Cir.1988). The "objective reasonableness test" requires careful attention to the circumstances of the particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor, supra,* at 396, 109 S.Ct. 1865. The focus is on reasonableness at

the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* The analysis concerns the threat the officer perceives at the time, not what a criminal jury may find later to be proved or not proved beyond a reasonable doubt. *See Greenidge v. Ruffin,* 927 F.2d 789 (4th Cir.1991).

In this case, it is undisputed that the officer perceived a suspect who was actively resisting arrest. The simple taking of plaintiff to the ground by tripping his foot and holding his wrist is, under these circumstances, not excessive use of force. To the contrary, it is the minimal force an officer can apply to secure a resisting suspect.

In conducting such review, the undersigned has considered plaintiff's own sworn testimony and his injuries. Plaintiff avers that he was not struck, kicked, or beaten by Defendant Hester in any fashion. The only injuries plaintiff sustained were minor scrapes, which did not require medical attention and did not result in any scarring. More than *de minimis* injury is essential to moving forward to a jury a claim under the fourth amendment for excessive use of force. *Ritchie v. Jackson,* 1996 WL 585152, *1, 1996 U.S.App. Lexis 26644, at 4 (4th Cir.1996) (up; copy attached to defendants' reply). *See also Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir.2000).

Inasmuch as plaintiff has failed to show that Defendant Hester used anything other than minimal force to effectuate his arrest or that Defendant Hester inflicted anything other than minor scratches, the undersigned is compelled to recommend that summary judgment be granted on plaintiff's claim of excessive force because the force used by Defendant Hester was, without question, objectively reasonable.

The court will further recommend that plaintiff and his attorney be allowed an opportunity to extricate themselves from possible contempt, Rule 11 violations, and possible criminal prosecution for what appears to be *prima facie* perjury in the *verified* complaint and amended complaint, through retracting the offending pleadings.

### D. Official–Capacity Claims

In an abundance of caution, defendants have moved to dismiss the official-capacity claims lodged by plaintiff against Defendants Good and Hester. Defendants argue that a Sheriff in North Carolina is a state officer, not a county officer, and that any Section 1983 official-capacity claim would be barred, inasmuch as a suit against a state actor is a suit against the state, which enjoys immunity under the eleventh amendment. While resolution of plaintiff's substantive claims does not necessitate reaching this procedural issue, the undersigned will enter a recommendation in the event the district court declines to follow the undersigned's preceding recommendations.

In *Harter v. Vernon,* 101 F.3d 334 (4th Cir.1996), the Court of Appeals for the Fourth Circuit concluded that a North Carolina Sheriff acts on behalf of his or her county, not the state, when performing law-enforcement duties, and, therefore, is not entitled to eleventh-amendment immunity. After *Harter,* the United States Supreme Court, in *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), abandoned the analysis applied by the appellate court in *Harter.*

The *Harter* court determined that the most critical factor, if not the conclusive one, is whether the treasury of the state would be affected by an adverse judgment against the public official in question. *Id.,* at 337–39. The Court in *Regents* later determined that the impact of a judgment on a state treasury is not the dominant factor in determining eleventh-amendment immunity, since the determination does not turn on "a formalistic question of ultimate financial responsibility." *Regents of the University of California v. Doe, supra,* at 431, 117 S.Ct. 900. The Court held that the question of whether a particular entity

is an arm of the state "can be answered *only* after considering the provisions of state law that define the agency's character [as an agency of local government or an arm of the state]." *Id.*, at 429, n. 5, 117 S.Ct. 900 (emphasis added).

This departure from *Harter* was further emphasized in the Supreme Court's latest opinion, *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), wherein the Court unequivocally held that the question of whether a sheriff represents the state or the county is "dependent on the definition of the official's functions under relevant state law." *Id.*, at 1737.

In reliance upon *McMillian*, the North Carolina Court of Appeals, in *Buchanan v. Hight*, 133 N.C.App. 299, 515 S.E.2d 225 (1999), recently reaffirmed that a sheriff and his deputies function as "state officials" and, therefore, are not "persons" within the meaning of Section 1983 when sued in their official capacities. *See also Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir.2000). *McMillian* provides that this court is required to look to state law in determining whether a local public official acts on behalf of the county or the state. Indeed, sister federal district courts have concluded under *McMillian* that North Carolina sheriffs enjoy eleventh-amendment immunity. *See Cash v. Granville County Bd. of Educ.*, 5:99CV408 BR3 (E.D.N.C. March 8, 2000); *Sampson v. Maynor*, 7:99CV51 F (E.D.N.C. October 6, 1999). (Copies attached as Exhibits "G" and "H" to defendants' brief).

Historically, the position of sheriff in North Carolina has been tied not only to law enforcement, but to governance. In 1754, sheriffs were appointed by the English Crown to collect quitrents from county residents. In 1776, the English system was little changed when the State of North Carolina, as one of its first legislative acts, created the office of sheriff, which was filled by legislative appointment. It was not until 1829 that citizens of North Carolina were given the authority to elect

their sheriffs. As historical commentators have noted,[4] a sheriff headed county government and held the unique position of representing state government on a local basis. Although the North Carolina Constitution has been reworked several times in the last two centuries, the method of selecting a sheriff has undergone little change, despite the urging of reformers. Today, the office of sheriff is established by Article VII, Section 2, of the North Carolina Constitution (1970). The extraordinary role a sheriff plays in North Carolina's system of justice is nowhere better defined than in Chapter 17E–1, which provides, as follows:

The General Assembly finds and declares that the office of sheriff, the office of deputy sheriff and the other officers and employees of the sheriff of a county are unique among all of the law-enforcement offices of North Carolina. The administration of criminal justice has been declared by Chapter 17C of the General Statutes to be of statewide concern to the people of the State. The Sheriff is the only officer of local government required by the Constitution. The sheriff, in addition to his criminal justice responsibilities, is the only officer who is also responsible for the courts of the State, and acting as their bailiff and marshal. The sheriff administers and executes criminal and civil justice and acts as the *ex officio* detention officer.

The deputy sheriff has been held by the Supreme Court of this State to hold an office of special trust and confidence, acting in the name of and with powers coterminous with his principal, the elected sheriff.

The offices of sheriff and deputy sheriff are therefore of special concern to the public health, safety, welfare and morals of the people of the State.

N.C. Gen.Stat. § 17E–1 (as revised by 1995 N.C. Sess. Laws 103). Based upon all the information and law available, including the decision of the Supreme Court

4. Hugh Lefler, *North Carolina History.*

in *McMillian*, the undersigned must recommend that the official-capacity claims lodged against the sheriff and his deputy be dismissed, inasmuch as a suit against a North Carolina sheriff and/or his deputy is a suit against the State of North Carolina, which enjoys eleventh-amendment immunity.

### E. Plaintiff's Claim Against the Sheriff's Bond

As a matter of housekeeping, plaintiff's claim against Defendant Good's bond should also be dismissed, for no substantive claims can survive summary judgment.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion for Summary Judgment be **ALLOWED** in its entirety, inasmuch as no genuine issues of material fact remain and defendants are entitled to entry of **JUDGMENT** as a matter of law; that **JUDGMENT** be entered in favor of defendants and against plaintiff providing that plaintiff have and take nothing of defendants and that defendants recover their costs.

**IT IS FURTHER RECOMMENDED** that, if the district court finds such relief to be in the interests of justice, plaintiff and his counsel be afforded an opportunity to recount and retract from the public record plaintiff's averment that Defendant Hester broke his finger and, thereby, to possibly avoid civil and criminal repercussions.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This Memorandum and Recommendation is entered in response to defendants' Motion for Summary Judgment (# 52).