**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANTHONY LAMBERT, SR.; MARION
KNIGHT LAMBERT,
<u>Plaintiffs-Appellants,</u>

v.

BRENDA G. WILLIAMS, individually
and in her official capacity as a
Social Worker; VELVEETA R. REID,
individually and in her official
capacity as Social Worker; DARLENE
REID, individually and in her official
capacity as Social Worker; ALICE E.
STALLINGS, individually and in her
official capacity as Service

Supervisor; VIOLA SPIVEY,
individually; WILLIE BINES,
individually; GWENDOLYN C.
COLEMAN, individually and in her
capacity as Director, Pasquotank
County Department of Social
Services; PASQUOTANK COUNTY
DEPARTMENT OF SOCIAL SERVICES;
PASQUOTANK COUNTY BOARD OF
SOCIAL SERVICES; PASQUOTANK
COUNTY, NORTH CAROLINA; BOARD OF
COMMISSIONERS, Pasquotank County,
<u>Defendants-Appellees.</u>

No. 99-1819

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-98-9-2-BO)

Argued: April 7, 2000

Decided: August 7, 2000

Before MOTZ, Circuit Judge, Samuel Grayson WILSON,
Chief United States District Judge for the
Western District of Virginia, sitting by designation, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilson wrote the opin-
ion, in which Judge Motz and Judge Lee joined.

_____

**COUNSEL**

**ARGUED:** Lawton P. Cummings, Student Counsel, Appellate Litiga-
tion Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellants. Coleman M. Cowan, WOMBLE,
CARLYLE, SANDRIDGE & RICE, P.L.L.C., Raleigh, North Caro-
lina; Thomas Giles Meacham, Jr., NORTH CAROLINA ATTOR-
NEY GENERAL'S OFFICE, Raleigh, North Carolina, for Appellees.
**ON BRIEF:** Steven H. Goldblatt, Director, Nicole J. Williams, Stu-
dent Counsel, Appellate Litigation Program, GEORGETOWN UNI-
VERSITY LAW CENTER, Washington, D.C., for Appellants. Robert
H. Sasser, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C.,
Raleigh, North Carolina, for Appellees Williams, et al.

_____

**OPINION**

WILSON, Chief District Judge:

Appellants Anthony Lambert, Sr., and Marion Knight Lambert
("the Lamberts") appeal from the district court's order dismissing
their 42 U.S.C. § 1983 action. In an earlier decision, we held that res
judicata barred all claims asserted by the Lamberts, with the excep-

tion of a claim for malicious prosecution. See Lambert v. Williams, No. 98-2070 (4th Cir. Dec. 29, 1998). The district court dismissed on remand, holding that the Lamberts failed to state a claim against the appellees sued in their official capacities and extending qualified immunity to the appellees sued in their individual capacities. We find that the Lamberts have not stated a viable claim under § 1983, and therefore affirm.

I.

The Lamberts, proceeding pro se, filed this § 1983 action challenging child abuse and neglect proceedings brought against them by Pasquotank County, North Carolina officials. The Lamberts named various state and local government officials in their individual and official capacities (collectively, the "individual appellees"),[1] in addition to the Pasquotank County Department of Social Services, the Pasquotank County Board of Social Services, and Pasquotank County (collectively, the "county appellees").

The Lamberts alleged that on April 23, 1992, appellees Gwendolyn Coleman and Brenda Williams filed a juvenile petition in the county district court alleging that the Lamberts were abusing and neglecting their two children. County officials removed the children from the Lamberts' custody on an emergency basis on that day. On February 27, 1995, the county district court resolved the matter in the Lamberts' favor and restored to them custody of their children.

The Lamberts, proceeding pro se, filed this case in February 1998 in the U.S. District Court for the Eastern District of North Carolina. Their amended complaint alleged that from April 1992, when the county officials filed the juvenile petition, until February 1995, when the matter was resolved in the Lamberts' favor, the appellees conspired to deprive the Lamberts of the custody, care, and management of their children. The complaint set forth little in the way of specific

_____

[1] The individual appellees are North Carolina Guardian Ad Litem Program Supervisor Willie Bines; District Administrator Viola Spivey; Social Workers Brenda Williams, Velveeta Reid, and Darlene Reid; County Supervisor Alice Stallings; and former Director of Pasquotank County Department of Social Services Gwendolyn Coleman.

3

factual allegations. Instead, it concluded without elaboration that the underlying proceedings were "malicious" and baseless, that the appellees "knew or should have known" that the allegations were untrue, and that the appellees concealed exculpatory evidence, fabricated evidence, made false statements under oath, and failed to investigate the Lamberts' claim of innocence. The Lamberts also alleged that the appellees were motivated by racial animus (the Lamberts are African-American) and a desire to obtain increased federal funding for the county Department of Social Services when they brought and pursued the juvenile petition. With respect to the county appellees, the Lamberts alleged that they acted with "deliberate indifference" by failing to train the individual appellees in the proper handling of child abuse and neglect proceedings.

The Lamberts asserted numerous legal bases for their civil rights action, including the First, Fourth, Ninth, and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, and the North Carolina Constitution. Although the Lamberts did not specifically set forth a malicious prosecution cause of action, the district court construed the amended complaint to include such a claim.

The district court initially dismissed the entire action as barred by res judicata, since the Lamberts brought these identical allegations in state court in 1994 and the state court dismissed the case on its merits. The Lamberts appealed the district court's res judicata ruling and, with the exception of the Lamberts' malicious prosecution claim, we affirmed. Regarding the malicious prosecution claim, we noted that the Lambert's state court action was dismissed before the custody proceedings were terminated in the Lamberts' favor; consequently, the malicious prosecution claim was not ripe during the Lamberts' state court action, because favorable termination is an element of the common law malicious prosecution tort. See Lambert v. Williams, No. 98-2070, slip op. at 2-3.

On remand, the district court granted the appellees' supplemental motions to dismiss, finding that the individual appellees were entitled to qualified immunity on the remaining claim and that the Lamberts' allegations did not show that the county appellees were guilty of constitutionally-cognizable misconduct. The Lamberts filed a timely

4

appeal, and this court appointed counsel for the Lamberts for purposes of the appeal.

II.

The only remaining claim in this case is one the Lamberts now style a "§ 1983 malicious prosecution" claim. There is at present an "embarrassing diversity of judicial opinion" over the composition, or even existence, of a claim for "malicious prosecution" founded in § 1983. Albright v. Oliver, 975 F.2d 343, 345 (7th Cir. 1992), rev'd, 510 U.S. 266 (1994). The Lamberts contend that a plaintiff can establish a prima facie case for such a claim by proving (1) each element of the common law tort of malicious prosecution, and (2) the deprivation of some constitutional right. Construed liberally, the Lamberts' amended complaint satisfied this standard by alleging (1) the common law elements of malicious prosecution and (2) deprivations of their Fourteenth Amendment rights to "family integrity" and equal protection. See, e.g., Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977) (ordinance limiting permissible occupancy of dwelling to specified categories of related individuals violates due process right to family integrity); Oyler v. Boles, 368 U.S. 448, 455-56 (1962) (prosecution on the basis of race constitutes an equal protection violation); Haines v. Kerner, 404 U.S. 519, 520 (1972) (federal courts should construe pro se pleadings liberally).

The Lamberts' amended complaint also alleged independent violations of their equal protection and family integrity rights. However, we found those claims to be barred by res judicata in our earlier ruling. Understood in light of this disposition, the Lamberts essentially contend now that § 1983 enables them to bring a claim for malicious prosecution that is somehow distinct from the underlying constitutional violation, though it incorporates constitutional elements. We now hold that § 1983 does not empower a plaintiff to bring a claim for malicious prosecution simpliciter. What is conventionally referred to as a "§ 1983 malicious prosecution" action is nothing more than a § 1983 claim arising from a Fourth Amendment violation. The Lamberts have not, however, raised a Fourth Amendment argument in this appeal. The theory that the Lamberts do set forth does not, in light of our earlier res judicata ruling, state a claim for relief under § 1983.

5

The common law tort of malicious prosecution is well-established: a prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed. 1984). Common law malicious prosecution is not itself redressable under § 1983, however, since § 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 (1979); see also United States v. Lanier, 520 U.S. 259, 272 (1997) ("[C]ivil liability under § 1983 . . . may be imposed for deprivation of a constitutional right if, but only if, in light of pre-existing law the unlawfulness [under the Constitution] is apparent.").

Initially, some lower courts, including this Court, held that a plaintiff could prove a violation of substantive due process by proving the common law elements of malicious prosecution and state action. See, e.g., Goodwin v. Metts, 885 F.2d 157, 160 n.1 (4th Cir. 1992). The Supreme Court rejected this approach, however, in Albright v. Oliver, 510 U.S. 266 (1994). Albright involved a§ 1983 claim that the petitioner styled a "malicious prosecution" claim, in which the petitioner contended that his "`liberty interest' to be free from criminal prosecution except upon probable cause" constituted a violation of substantive due process. 510 U.S. at 268. The Albright Court did not produce a majority opinion, but a majority of justices agreed that the right to be free from prosecution without probable cause was not a substantive due process right, but rather was a violation of the petitioner's Fourth Amendment right to be free from unreasonable seizures. See id. at 271 (plurality); id. at 275 (Scalia, J., concurring); id. at 280 (Kennedy, J., concurring in judgment and joined by Thomas, J.); id. at 281 (Ginsburg, J., concurring); id. at 288-89 (Souter, J., concurring in judgment). The plurality noted specifically that"substantive due process may not furnish the constitutional peg on which to hang [a malicious prosecution] `tort.'" Id. at 271 n.4. Since the petitioner in Albright did not raise a Fourth Amendment argument, the Court did not have occasion to reach the Fourth Amendment issue in its holding. Thus, although the various opinions in Albright "add[ ] up to a

6

fairly strong sentiment against constitutionalizing malicious prosecution," 1A Martin A. Schwartz, Section 1983 Litigation § 3.20, at 322 (3d ed. 1997), the decision itself ultimately does not reach the question.

In the wake of Albright, the courts of appeals have diverged, some finding that § 1983 does not provide a malicious prosecution cause of action, some that it does, some that it might. The Third Circuit has adopted a variation of the theory offered by the Lamberts, see Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998) ("Albright stands for the broader proposition that a section 1983 [malicious prosecution] claim may be based on a constitutional provision other than the Fourth Amendment."), but no other circuit has followed suit. At least two circuits have indicated that the common law elements of malicious prosecution may establish a Fourth Amendment violation with respect to defendants acting under color of state law. See, e.g., Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir. 1999); Cervantes v. Jones, 188 F.3d 805, 808-09 (7th Cir. 1999). Others have held that the malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. See, e.g., Britton v. Maloney, 196 F.3d 24, 28-29 (1st Cir. 1999); Uboh v. Reno , 141 F.3d 1000, 1003 (11th Cir. 1998); Spiegel v. Rabinovitz, 121 F.3d 251, 256 (7th Cir. 1997); Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997); Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996).

We adopted the latter view in Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996). The appellant in Brooks alleged that he had been arrested and prosecuted on state criminal charges in violation of the Fourth, Fifth, and Fourteenth Amendments, because his arrest was not supported by probable cause and the authorities continued his prosecution after it was apparent that he was innocent. We found that those claims were "analogous to two common-law causes of action -- false arrest and malicious prosecution," id. at 181 (citations omitted), and proceeded to consider the appellant's constitutional claims in light of the elements of those common law torts. However, although we styled the claim as a § 1983 malicious prosecution claim and incorporated common law elements, we did not treat the claim as separate and distinct from the appellant's constitutional allegations.**2** We

_____

**2** We found, for instance, that malice was not an element of the § 1983 claim since the reasonableness of a seizure under Fourth Amendment

made it clear, rather, that the foundation for his claim was "a seizure that was volative of the Fourth Amendment." Id. at 184.

By incorporating the common law into our § 1983 analysis, we follow a consistent line of authority which has looked to common law torts bearing similarity to the constitutional rights at issue and incorporated into those claims common law elements of damages, prerequisites for recovery, and immunities. See, e.g., Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (finding legality of confinement claim analogous to malicious prosecution tort, and incorporating into the federal claim the common law prerequisite of termination of the prior criminal proceeding in favor of the accused); Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 305-06 (1986) (incorporating common law damages principles into § 1983 claim and finding that the abstract "value" of constitutional rights cannot form the basis of compensatory relief); Carey v. Piphus, 435 U.S. 247, 253-67 (1978) (structuring compensatory damages principles under§ 1983 by reference to common law); Imbler v. Pachtman, 424 U.S. 409, 422-29 (1976) (incorporating common law principle of prosecutorial immunity). The purpose of incorporating common law principles into § 1983 is not to create new causes of action in addition to those already found within the Constitution and federal statutes covered by § 1983. Baker v. McCollan makes this clear enough. See 443 U.S. at 144. Rather, federal courts incorporate the common law into § 1983 in recognition of the fact that § 1983 was designed to create a "special species of tort liability," Imbler, 424 U.S. at 417, founded on rights originating in the Constitution and certain federal statutory law, and that:

> over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under§ 1983 as well.

_____

jurisprudence "should be analyzed from an objective perspective." Brooks, 85 F.3d at 184 n.5.

8

Carey, 435 U.S. at 257-58. Our analysis in Brooks, understood in light of these precedents, makes clear that there is no such thing as a "§ 1983 malicious prosecution" claim. What we termed a "malicious prosecution" claim in Brooks is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution -- specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. See Brooks, 85 F.3d at 183.**3** It is not an independent cause of action.

The Lamberts have not raised a Fourth Amendment claim on appeal. They argue instead that they have stated a§ 1983 malicious prosecution claim by alleging the common law elements of malicious prosecution and the deprivation of their Fourteenth Amendment rights to family integrity and equal protection. When we remanded the case to the district court and left open the Lamberts' malicious prosecution claim, we did not leave open, under the guise of malicious prosecution, constitutional claims barred by res judicata. We left open, at most, a § 1983 claim grounded in the Fourth Amendment.**4** Since the

_____

**3** As we noted in Brooks, the significance of the favorable termination element is not only that it constitutes a prerequisite for recovery, but also that it establishes the time from which the claim accrues for purposes of determining whether the statute of limitations has run. See Brooks, 85 F.3d at 183 (citing Heck, 512 U.S. at 483; Morrison v. Jones, 551 F.2d 939, 940-41 (4th Cir. 1977)).

**4** Admittedly, our earlier opinion in this matter exhibits some ambiguity. The opinion begins by noting that the Lamberts"appeal from the district court's order dismissing their 42 U.S.C.A.§ 1983 action as barred by res judicata. As to all but the malicious prosecution claim, we affirm on the reasoning of the district court." Lambert v. Williams, No. 98-2070, slip op. at 2. This introduction could be read to suggest that we were leaving open a § 1983 cause of action centered on a Fourth Amendment violation, and counsel for the Lamberts suggested this interpretation at oral argument. In the remainder of the opinion, however, we cite not to Brooks or any other § 1983 decision in discussing the favorable termination requirement, but rather to two North Carolina cases that involve application of the North Carolina malicious prosecution tort. See id. at 3 (citing Hogan v. Cone Mills Corp., 337 S.E.2d 477, 482 (N.C. 1985); Best v. Duke Univ., 448 S.E.2d 506, 510 (N.C. 1994)).

Accepting the Lamberts' reading of the introduction of our earlier opinion in light of these North Carolina citations, it would follow that the

Lamberts have not raised such a claim, and the claim they raise is not a viable one, we find that the Lamberts have not stated a claim for relief under § 1983, and affirm.**5**

AFFIRMED
_____

Lamberts could bring the North Carolina malicious prosecution tort in federal court under § 1983. This is obviously not, however, what we had in mind. A fair reading of our earlier opinion in light of our discussion, supra, indicates either that we left open only the Lamberts supplemental North Carolina claim for malicious prosecution, or that we left that claim open in addition to a Fourth Amendment claim under § 1983 that we styled, for purposes of convenience, as a "malicious prosecution" claim. Since the Lamberts have not raised either the North Carolina malicious prosecution tort or the Fourth Amendment in this appeal, we affirm the district court under either interpretation of our earlier opinion.

The Lamberts have filed a motion for leave to submit a post-argument statement in this matter, which they maintain demonstrates that we remanded a § 1983 cause of action. Since we have made that assumption in the disposition of this opinion, we need not grant the Lamberts' motion.

**5** Having found that the Lamberts have not raised a viable § 1983 claim, we need not determine whether any rights the Lamberts have asserted were "clearly established" for purposes of qualified immunity. See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir. 1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").

10